UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD J. WILSON, CDCR #B93800,<br><br>Plaintiff,<br><br>vs.<br><br>J. SANTANA, Associate Warden, et al.,<br><br>Defendants. | Case No.: 3:23-cv-00250-RBM-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 5]**<br><br>**(2) DISMISSING DEFENDANTS AND CLAIMS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)**<br><br>**(3) DENYING REQUEST TO APPOINT COUNSEL** |

Plaintiff Gerald J. Wilson, currently incarcerated at R.J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Compl. [Doc. 1].) Plaintiff seeks to sue nearly two dozen doctors, health care workers, correctional and appeals officials for allegedly violating his First and Eighth Amendment rights while he was incarcerated at RJD in San Diego, Kern Valley State Prison ("KVSP") in Delano, California, and California State Prison Los Angeles County ("LAC") in Lancaster, California, from June 2018 through

September 2022. (*Id.* at 10–55.[1]) He seeks $5 million in general and punitive damages, and injunctive relief enjoining defendants from refusing to enforce the Americans With Disabilities Act ("ADA"). (*Id.* at 56–57.)

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a), but instead filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (Doc. 5.) He also asks for counsel to be appointed. (Doc. 1 at 56.)

## I.     MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.
[2] In civil actions except for applications for a writ of habeas corpus, civil litigants bringing suit must pay the $350 statutory fee in addition to a $52 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). However, the $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his IFP Motion, Wilson has submitted a certified copy of his trust account statement and a prison certificate (Doc. 6) pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2.  *Andrews*, 398 F.3d at 1119.  These documents show that Wilson had an available balance of $14.66 at the time of filing.  (Doc. 6 at 1–3.)  Therefore, the Court **GRANTS** Wilson's Motion to Proceed IFP (ECF No. 5), declines to exact the initial filing fee because his trust account statement indicates he may have "no means to pay it," *Bruce*, 577 U.S. at 85, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1) and forward them to the Clerk of the Court.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"). *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

**II.   INITIAL SCREENING PER 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

A.  <u>Standard of Review</u>

Because Wilson is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).  Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous,

malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a

right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B. <u>Plaintiff's Allegations</u>

Plaintiff lists twenty-two separate Defendants and alleges violations of his constitutional rights to be free from cruel and unusual punishment under the Eighth Amendment, and to free speech under the First Amendment which he claims occurred at three different prisons over the course of four years. (Compl. [Doc. 1].)

*1. RJD Claims and Defendants*

Wilson's claims regarding events that occurred at RJD concern two time periods, 2018 and 2022, and involve Defendants Santana, Frijas, Ortiz, Van Buren, Casian, Miguel, and Dole. (*Id.* at 16–24, 47–54.) Wilson claims he is permanently disabled from a 2016 incident and has balance issues which require him to be housed in an ADA cell with grab bars by the toilet. (*Id.* at 16.) When he was transferred to RJD in mid-June of 2018, he told the receiving lieutenant of his need for an ADA cell, but he was instead housed in a non-ADA cell in the Administrative Segregation Unit ("ASU"). (*Id.*) Wilson filed a request for reasonable accommodation with the "reasonable panel" at RJD, on which Defendants Santana, Casian, Frijas, Van Buren, and Ortiz sit; he asked to be housed in an ADA cell with grab bars by the toilet in order to prevent him from injuring himself. (*Id.* at 17.) On June 22, 2018, he fell while using the toilet in his cell, seriously injuring his head, back, neck, and wrist. (*Id.* at 18.) Wilson was taken to the infirmary where x-rays and CT scans were performed. (*Id.* at 18–19.) He was released with pain medication and a wrist brace. (*Id.* at 19.) After three weeks with no response from the reasonable accommodation committee, Wilson submitted a healthcare grievance, which was denied. (*Id.* at 21.) Wilson appealed the denial, which was also denied. (*Id.* at 22.)

Wilson claims that when he returned to RJD in 2022, Defendant Miguel shut his leg and wheelchair in a door on September 24, 2022, injuring Wilson's leg and damaging his wheelchair. (*Id.* at 50.) Several days later, Miguel forced Wilson to wait outside his

housing unit in the hot sun, which Wilson claims was in retaliation for Wilson filing a grievance against Miguel for shutting the door on his leg and wheelchair. (*Id.* at 49–50.)

Wilson was housed at RJD in 2022 as an "out to court" transfer in order to be closer his attorney who was representing him in another matter in this Court. (*Id.* at 50–51.) According to Wilson, he was supposed to be transferred back to LAC within seven working days, but he was still housed at RJD a month later. (*Id.* at 51.) When Wilson talked to Defendant Dole about the matter and his desire to return to LAC, Dole told Wilson there was nothing she could do about it, but that she would try to find out what was happening. (*Id.*) Wilson claims he was never approved to be housed at RJD because it does not meet his programming needs, and he blames Dole for preventing his return to LAC where he has family. (*Id.* at 52–53.)

*2. KVSP Claims and Defendants*

Wilson was transferred to KVSP sometime in late 2018 or early 2019 and was again housed in a non-ADA cell with no grab bars near the toilet. (*Id.* at 24.) According to Wilson, in March of 2019, Defendant Rhordanz began tapering Wilson off his pain medication despite Wilson telling Rhordanz he was in extreme pain. (*Id.* at 24–25.) Rhordanz also stopped advocating for Wilson to be housed in an ADA cell. (*Id.* at 24.) Wilson alleges that after he filed a health care grievance and a complaint with the California Medical Board about Rhordanz, Rhordanz was replaced by Defendant Zepp as his health care provider. (*Id.* at 25.) Zepp ordered x-rays, blood tests and an MRI for Wilson, and prescribed him pain medication and physical therapy. (*Id.* at 26.) According to Wilson, his physical therapist reported to Zepp that Wilson needed an ADA cell because he was unable to support himself due to chronic pain. (*Id.* at 27.)

In February of 2019, Defendant Furlong told Wilson there was a policy that special needs yard prisoners were not allowed to wear hats while on the patio and told Wilson to take off his hat. (*Id.* at 36.) Wilson objected because it was rainy and cold outside and told Furlong he would get sick if he took his hat off. (*Id.*) Furlong told Wilson that he did not

care if Wilson got sick and told him that if he did not take the hat off, he would take it from him. (*Id.*)

In May of 2019, while Wilson was attending a self-help group at KVSP, Defendant Eaker tried to place hand cuffs on Wilson for transport. (*Id*. at 35.) Wilson told Eaker that per his doctor's orders, he needed to be placed in waist restraints instead because of his medical condition. (*Id*.) At first, Eaker refused to do so but then relented. (*Id*. at 36.) Defendant Rowland, who had provided the waist restraints to Eaker, told Eaker to "put them on real tight," to which Eaker responded, "I will." (*Id*. at 36.) Eaker then put the waist restraints on Wilson so tightly that they restricted blood flow to his arms and left marks on his wrists. (*Id*.)

On October 27, 2020, following further diagnostic testing, Zepp diagnosed Wilson with degenerative disc and joint disease and arthritis of his hips, back and neck. (*Id*.) Zepp told Wilson these were chronic conditions, and that he would be tapered off his pain medication and prescribed Tylenol. (*Id.*) When Wilson objected and told Zepp he was in severe pain and needed the pain medication, Zepp refused to provide it and told Wilson he would have to suffer the pain. (*Id.* at 28.)

In November and December of 2020, Wilson filed health care grievances regarding the failure to treat his pain. (*Id.* at 29–30.) Wilson also noted that he was becoming weaker and weaker because he was unable to exercise due to his pain and that he was in constant fear of falling. (*Id.* at 30.) Wilson also complained that he was using the sink by the toilet as a make-shift grab bar because he was unable to squat down on the toilet without it. (*Id.* at 31.) He again asked for an ADA cell as well as a walker with a seat. (*Id.*) On December 2, 2020, Wilson fell as he was walking to the toilet in the middle of the night and lay on the floor until a guard found him the next morning. (*Id.* at 31.) He injured his finger when he tried to break his fall with his hand. (*Id.* at 32.)

Following this incident, Wilson submitted another health care grievance asking for a walker with a seat and a placement in an ADA cell. (*Id.* at 32–33.) He also filed a reasonable accommodation request to Defendants Castro, Igbinosa, Montes, and

Bojorquez, and sent a letter to the Prison Law Office explaining his need for a walker with a seat and an ADA cell. (*Id.* at 33.) His requests for reasonable accommodations were denied; the denial stated that "custody staff that regularly supervise Wilson . . . [were] interviewed on March 24, 2021, and reported Wilson has been seen on numerous occasions walking into the building without an issue. . . ." (*Id.* at 34.) Wilson was referred back to physical therapy, who assessed him as being a "100% fall risk" and noted his assessment scores were associated with an individual who "is either already wheelchair bound or may be in the near future." (*Id.*) After the Prison Law Office wrote a complaint on Wilson's behalf asking for him to be placed in an ADA cell and be given a walker with a seat, he was granted those accommodations. (*Id.* at 38.)

On September 21, 2021, Wilson alleges Defendant Garcia recruited an inmate to fraudulently deduct $427 from his trust account. (*Id.* at 41.) He filed a grievance about Garcia's actions and claims her body-worn camera revealed a conversation between her and the inmate which supported this claim. (*Id.*) He also alleges Garcia refused to give him an ADA shower. (*Id.*) As to Defendant Ackvendo, Williams claims on February 22, 2022, Ackvendo left him outside in the rain for thirty minutes before he searched him and allowed him back into the building after Wilson's vocational assignment. (*Id.* at 41.)

*3. LAC Claims and Defendants*

When Wilson arrived at LAC, he was put in a quarantine building per CDCR policy. (*Id.* at 43–44.) Wilson claims that on May 8, 2022, thirty days after he arrived at LAC, he asked Defendant Geiwitz why he was still in quarantine, Geiwitz told him that all the ADA cells were currently full and he would have to wait awhile before one became available. (*Id.* at 45.) Later, after Wilson refused to move to a non-ADA cell, Wilson claims Geiwitz came to his cell and threatened to use a cell extraction if Wilson did not accept his next cell assignment. (*Id.* at 46.) Geiwitz also told Wilson the recommendation for an ADA cell with grab bars had been removed from Wilson's medical file; Wilson claims this was done at Geiwitz's request. (*Id.*) Wilson was later moved to a non-ADA cell, where he suffered

a heart attack. (*Id.*) When he was released from the hospital, he was given an ADA cell with grab bars. (*Id.*)

C. <u>Discussion</u>

    1. *Wilson's Claims Against RJD Defendants Santana, Casian, Frijas, Van Buren, and Ortiz Are Barred by the Statute of Limitations*

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Such a dismissal is proper so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276–77 (9th Cir. 1993) *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of statute of limitations sua sponte), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir. 2011) (en banc); *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's time-barred complaint).

Because section 1983 contains no specific statute of limitation, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). California's statute of limitations for personal injury actions is two years. *Jones*, 393 F.3d at 927 (citing Cal. Code Civ. Proc. § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law). Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for two years. Cal. Code Civ. Proc. § 352.1(a); *Johnson v.*

*California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005).  Accordingly, the effective statute of limitations for most California prisoners is three years for claims accruing before January 1, 2003 (one year limitations period plus two year statutory tolling), and four years for claims accruing thereafter (two year limitations period plus two years statutory tolling).

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543–44 (federal law governs when a § 1983 cause of action accrues).  "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391.  Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

It is clear from the face of the Complaint that the last event involving the RJD claims against Defendants Santana, Casian, Frijas, Van Buren, and Ortiz occurred, at the latest, on October 24, 2018, (Compl. at 22), and therefore the statute of limitations for those claims expired, at the latest, on October 24, 2022.  Wilson filed his Complaint raising his 2018 RJD claims against Defendants Santana, Casian, Frijas, Van Buren, and Ortiz February 6, 2023. (Compl. [Doc. 1].)

Wilson's claims could be considered timely if, in his Complaint, he alleges facts sufficient to show the limitations period may be *equitably* tolled.  *See Cervantes*, 5 F.3d at 1276–77.  Generally, federal courts also apply the forum state's law regarding equitable tolling.  *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988).  Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling.  *See Hull v. Central Pathology Serv.*

*Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316–17 (1978); *Fink*, 192 F.3d at 916.

Wilson has not pleaded any facts which would explain why he did not diligently pursue his 2018 RJD claims or what "forces beyond his control" prevented him from filing this action earlier. Thus, he has not plausibly alleged a claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679; *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (plaintiff carries the burden to plead facts which would give rise to equitable tolling); *see also Kleinhammer v. City of Paso Robles*, 385 Fed. Appx. 642, 643 (9th Cir. 2010). Accordingly, the Court finds that as to Wilson's RJD claims against Defendants Santana, Casian, Frijas, Van Buren, and Ortiz, the running of the statute of limitations is apparent on the face of his Complaint, and therefore he has failed to state a claim upon which section 1983 relief may be granted as to those Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1).

Wilson's claims involving RJD Defendants Miguel and Dole, however, are not barred by the statute of limitations. Wilson claims that on September 24, 2022, Miguel violated his Eighth Amendment rights when he shut Wilson's leg and wheelchair in a door, injuring his leg and damaging the wheelchair, and his First Amendment rights when he retaliated against Wilson for filing a grievance about the incident by refusing to allow him to return to his housing unit, forcing him to sit out in the hot sun, on September 28, 2022. (Compl. at 47–50.) Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the context of prison officials who are alleged to have used excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6–7; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Because Wilson alleges Miguel "slamm[ed] Plaintiff's leg and wheelchair in the yard door while Plaintiff was being push[ed] by a ADA worker," he has sufficiently alleged Miguel

acted "maliciously and sadistically to cause harm" without any provocation. *Hudson*, 503 U.S. at 5; *see also Stewart v. Ayala*, No. CV 21-9638 RGK (AS), 2023 WL 2993042, at *2 (C.D. Cal. March 8, 2023) (stating that "[t]here is no legitimate need to use any force against an inmate who is neither violating prison rules nor reasonably believed to pose a security threat," and finding allegation that Defendant deliberately closed a cell door on Plaintiff's head sufficient to state an Eighth Amendment claim).

Wilson also alleges Miguel retaliated against him for reporting the wheelchair incident by refusing to allow him to enter his housing unit, forcing him to wait in the hot sun. (Compl. at 47–50.) "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Wilson alleges that on September 28, 2022, he arrived at his housing unit's yard door from the program office and rattled the yard door handle to alert the correctional officer inside that he was waiting outside; he did not receive a response for five minutes. (Compl. at 48.) While he was waiting, he heard the guard tower announce "yard down," which meant all inmates on the yard were to stop what they were doing and sit down. (*Id.*) Miguel eventually responded to Wilson's presence by opening building eleven's control booth to ask what Wilson wanted. (*Id.* at 49.) When Wilson told him he was returning from the program office and needed to get back to his cell because of the heat, Miguel told him "No," and refused to open the door because of the "yard down" call. (*Id.*)

Wilson has not stated a retaliation claim against Miguel because he has not plausibly alleged Miguel's refusal to allow him into the housing unit "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68. Institutional security is a

legitimate correctional goal. *Nevada Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).  Miguel told Wilson he could not open the housing unit door because of the "yard down" call.  Thus, Wilson's own facts show Miguel's refusal to open the yard door and permit Wilson to enter the housing unit was for a legitimate correctional goal and not in retaliation for Wilson reporting Miguel for closing his leg and wheelchair in a door. *Rhodes*, 408 F.3d at 567–68.

Wilson also claims Dole retaliated against him by refusing to initiate a transfer back to LAC from RJD.  (Compl. at 50–54.)  He alleges that he was temporarily transferred to RJD from LAC to make it easier for him to participate in another civil rights case he was pursuing in this Court in June of 2022.  (*Id.* at 51.)  After that case concluded, Wilson claims he was told he would be transferred back to LAC within seven days.  (*Id.*)  When that did not happen, Wilson spoke to Correctional Counselor Dole, who told him there was "nothing she could do about it," but that she would "inquire about the matter."  (*Id.*)  Wilson was particularly upset about not being transferred back to LAC because his brother, who visited Wilson in prison often, passed away in November of 2022.  (*Id.* at 52.)

Wilson has not stated a retaliation claim against Dole because he has not plausibly alleged he engaged in any protected conduct which triggered retaliatory action by Dole. (Compl. at 50–54.)  Moreover, Wilson states that Dole told him she could not do anything about the delayed transfer but would "inquire" about why he was not being transferred back to LAC.  Wilson therefore has not plausibly alleged Dole interfered with his transfer "because of . . . [his] protected conduct."  *Rhodes*, 408 F.3d at 567–68.

*2. Wilson's Claims Against the KVSP and LAC Defendants are Misjoined*

With respect to all claims alleged against KVSP Defendants Castro, Igbinosa, Montes, Bojorquez, Rimbach, Bacomfield, Rhordanz, Zepp, Furlong, Eaker, Rowland, Garcia, and Ackvendo, and LAC Defendant Geiwitz, the Court finds they are unrelated and improperly joined to the transactions, occurrences, and claims alleged against the RJD Defendants which form the basis of Plaintiff's suit.

///

      The Federal Rules of Civil Procedure set forth the rules regarding joinder of parties or claims. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)); *Palmer v. Woodford*, No. 1:06-CV-00512-LJO, 2011 WL 6294372, at *1–2 (E.D. Cal. Dec. 15, 2011). Moreover, claims may be brought against multiple defendants only if (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.3d 1371, 1375 (9th Cir. 1980).

      As currently pleaded, the KVSP and LAC claims Plaintiff tacks on to the 2018 and 2022 claims he has alleged against the named RJD Defendants, and arising at a different facility at least six months to almost four years later, are not properly joined pursuant to Federal Rules of Civil Procedure 18 and 20, and therefore may not proceed in a single action. *See e.g., Palmer*, 2011 WL 6294372, at *1–2; *Coughlin*, 130 F.3d at 1351. Plaintiff's KVSP and LAC claims do not arise out of the same transaction or occurrence as his RJD claims, involve a whole separate set of Defendants, and do not present common questions of fact or law. *See* Fed. R. Civ. P. 20(a)(2). Therefore, while Plaintiff may amend his claims arising at RJD in order to address his pleading deficiencies as explained above, the remainder of his claims, all alleged to have arisen at KVSP and LAC are subject to dismissal without prejudice, but without leave to amend in *this* case. He may raise them in a new and separate civil action, filed in the proper venue. *See* 28 U.S.C. § 84(b) ("The Eastern District comprises the counties of . . . Kern, . . . ."); 28 U.S.C. § 84(c)(2) ("The

Western Division [of the] Central District [of California] comprises the counties of … Los Angeles, ….”); *see also* 28 U.S.C. § 1391(b)(1), (2).

D. <u>Leave to Amend</u>

A pro se litigant typically must be given leave to amend his pleading to state a claim unless it is absolutely clear the deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1130 (noting leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect"). Therefore, the Court will grant Plaintiff a chance to fix the pleading deficiencies discussed in this Order, *but only with respect to his claims against RJD Defendants Santana, Frijas, Ortiz, Van Buren, Casian, Miguel, and Dole only*. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

In the alternative, if Plaintiff wishes to proceed with respect to his Eighth Amendment claim against RJD Defendant Miguel only, he may file a Notice indicating his intent to stand on his original Complaint and proceed with that claim. If Plaintiff chooses this option, the Court will then direct the United States Marshal to effect service of his original Complaint on Defendant Miguel pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

### III. REQUEST TO APPOINT COUNSEL

Plaintiff also seeks the appointment of counsel pursuant to 28 U.S.C. § 1915, citing his confinement to a wheelchair and pain in his hips and back. (Compl. at 56.) There is no constitutional right to counsel in a civil case. *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of

success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner,* 785 F.3d 1299, 1309 (9th Cir. 2015) (*quoting Palmer*, 560 F.3d at 970).

As currently pleaded, nothing in Plaintiff's Complaint suggests he is incapable of articulating the factual basis for claims, which are typical conditions of confinement claims and "relatively straightforward." *Harrington*, 785 F.3d at 1309. In fact, the Court has found, based on its initial screening of Plaintiff's Complaint, that he has pleaded sufficient factual content to state a plausible Eighth Amendment claim for relief with respect to Defendant Miguel. *See Meeks v. Nunez*, Case No. 13cv973-GPC-BGS, 2017 WL 476425 at *3 (S.D. Cal. Feb. 6, 2017) (denying ADA inmate appointment of counsel where inmate "successfully survived screening," and had submitted motions "drafted with clarity and [asserting] proper arguments.").

In addition, while Plaintiff may have sufficiently *pleaded* an Eighth Amendment claim against Defendant Miguel, at this preliminary stage of the proceedings he has yet to demonstrate and it is too soon to tell whether there is a likelihood he will succeed on the merits. *Harrington*, 785 F.3d at 1309; *Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, but did not show likelihood of succeed on the merits); *see also Dickey v. Strayhorn*, Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 3118797, at *1 (S.D. Cal. July 21, 2017), *reconsideration denied,* Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 4271975 at *1 (S.D. Cal. Sept. 26, 2017) ("To demonstrate that he has a likelihood of success at trial, Plaintiff must do more than merely allege that one of his constitutional rights was violated. He must provide evidence to the effect that he has a likelihood of success on the merits of his allegations.").

Therefore, the Court finds no "exceptional circumstances" exist at this preliminary stage of the case and **DENIES** Plaintiff's request to Appoint Counsel without prejudice on that basis.

///

## IV. CONCLUSION AND ORDERS

Based on the foregoing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. 5).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the full $350 filing fee owed in this case, and to submit to the Clerk of the Court monthly payments in an amount equal to twenty percent (20%) of the preceding month's income, each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, , CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's claims against Defendants Santana, Frijas, Ortiz, Van Buren, Casian, and Castro, *sua sponte* for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) *without* prejudice and *with* leave to amend.

5. **DISMISSES** Plaintiff's First Amendment retaliation claims against Defendants Miguel and Dole *sua sponte* for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) *without* prejudice and *with* leave to amend.

6. **DISMISSES** Plaintiff's claims as to Defendants Castro, Igbinosa, Motes, Bojorquez, Rimbach, Bacomfield, Rhordanz, Zepp, Furlong, Eaken, Rowland, Garcia, Ackvendo, and Geiwitz *without* prejudice but *without* leave to amend in this action as improperly joined pursuant to Fed. R. Civ. P. 18 and 20; and

7. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either:

    (a) Notify the Court of his intention to proceed with his Eighth Amendment excessive force claim alleged in his original Complaint against

RJD Defendant Miguel only; or

        (b)    File an Amended Complaint which cures all the deficiencies of pleading noted in this Order with respect to his First and Eighth Amendment claims against RJD Defendants Santana, Frijas, Ortiz, Van Buren, Casian, Miguel, and Dole *only*. Plaintiff is cautioned that should he choose this course, his Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 3:23-cv-00250-RBM-DDL in its caption, and be complete by itself without reference to his original Complaint. Any Defendant not re-named and any claim not re-alleged in the Amended Complaint, including those which he alleged in his original Complaint, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to choose either of these options within 45 days, the Court will enter an Order dismissing his case based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1), and his failure to prosecute in compliance with a court order. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into a dismissal of the entire action."); S.D. Cal. CivLR 41.1; *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) (finding *sua sponte* dismissal pursuant to Fed. R. Civ. P. 41(b) proper where a plaintiff is notified of deficiencies in complaint and is given "the opportunity to amend [the complaint] or be dismissed" but "[does] *nothing*.") (citations omitted; emphasis in original).

///

The Clerk of Court is directed to mail Plaintiff a blank 42 U.S.C. § 1983 Amended Complaint form with a copy of this Order.

**IT IS SO ORDERED**.

Dated:  June 5, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE